[No. D009414. Fourth Dist., Div. One. Jan. 18, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BIRMINGHAM, Defendant and Appellant.

**COUNSEL**

Jeffrey J. Stuetz and Jeanne Geren Knight, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Frederick R. Millar, Jr., and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—David Birmingham entered a negotiated plea of guilty to two counts of lewd and lascivious conduct with a child under the age of fourteen years (Pen. Code,[1] § 288a). The court sentenced him to serve eight years in prison: the middle term of six years on one count, with a consecutive two-year term on the other. Birmingham appeals.

On August 23, 1988, a baby-sitter overheard Birmingham's six-year-old daughter E. say to her five-year-old friend Jessica, "Yeah, but you sucked my daddy's wiener." A week earlier, Jessica had stayed overnight with E. and both girls had orally copulated E.'s father. On August 25, the girls were examined at Palomar Hospital. Both showed symptoms of anal and vaginal trauma. Birmingham admitted the oral copulation but insisted anal and vaginal contact did not occur.

At the sentencing hearing, Jessica's and E.'s mothers spoke in favor of imprisonment. Jessica's mother said: ". . . I would like to say here today I don't think there is a sentence long enough for what David . . . did to my daughter. It is something that will be with her the rest of her life.

"It destroyed my five-year-old little daughter for what he did to her. And I think he should be sentenced for life. I don't think he deserves to get medical treatment.

"He acted like a friend to me. And he took my daughter into his house and did what he did to her, everything possible you can think of. And my daughter has to live with that the rest of her life."

E.'s mother told the court: "I feel he should be put away. He has interfered with my life. If he is out he does know where my daughter is. He knows exactly where she is. And I am totally destroyed trying to get my life back in order. It's been ripped up. I am just starting a new life and everything. That's basically it."

---

[1] All statutory references are to the Penal Code.

The probation report said Jessica's mother would appear at sentencing but the officer had been unable to contact E.'s mother. Birmingham submitted a psychological evaluation by Dr. Raymond Murphy. Noting Birmingham had been an Eagle Scout and had a high IQ, the trial court denied probation because he was a danger to the community, had no insight into the wrongfulness of his conduct, was not amenable to treatment, and had violated a position of trust. The court mentioned Dr. Murphy had diagnosed him as a pedophile.

Birmingham contends the trial court erred in permitting the victims' mothers to speak without notice, without oath, and without the opportunity to cross-examine, and abused its discretion in imposing consecutive terms and denying probation.

I

Birmingham bases his contention the trial court erred in permitting the victims' mothers to speak on statutory grounds; due process requirements of notice, oath, and opportunity to confront and cross-examine; and on *Booth* v. *Maryland* (1987) 482 U.S. 496 [96 L.Ed.2d 440, 107 S.Ct. 2529].

In *Booth,* the Supreme Court held introduction before a jury of a victim's impact statement in the sentencing phase of a capital murder trial violated the Eighth Amendment. (482 U.S. at pp. 501-502 [96 L.Ed.2d at p. 448].) *Booth* does not apply to sentencing hearings before a judge. (*People* v. *Sewell* (1989) 210 Cal.App.3d 1447, 1449 [259 Cal.Rptr. 34]; *People* v. *Stringham* (1988) 206 Cal.App.3d 184, 199 [253 Cal.Rptr. 484].)

Birmingham argues the introduction of the victims' mothers' statements deprived him of the statutory and due process rights to notice, to have evidence in aggravation given under oath, and to confront and cross-examine.

The probation report notified Birmingham that Jessica's mother would appear at the sentencing hearing. When E.'s mother also appeared, he made no objection to her statement, nor did he seek a continuance. As a result, he has waived any objection to the statement. He cannot complain for the first time on appeal. (*People* v. *Evans* (1983) 141 Cal.App.3d 1019, 1021 [190 Cal.Rptr. 633].)

In any case, section 1191.1 provides, in pertinent part: "The victim of any crime, or his or her parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died, has the right to attend all

sentencing proceedings under this chapter and shall be given adequate notice by the probation officer of all sentencing proceedings concerning the person who committed the crime.

"The victim, or his or her parent or guardian if the victim is a minor, or next of kin has the right to appear, personally or by counsel, at the sentencing proceeding and to reasonably express his or her views concerning the crime, the person responsible, and the need for restitution. The court in imposing sentence shall consider the statements of victims, parents, or guardians, and next of kin made pursuant to this section and shall state on the record its conclusion concerning whether the person would pose a threat to public safety if granted probation."

The section itself gives notice a victim or the parent of a victim may appear and be heard at sentencing. Aside from *Booth* v. *Maryland, supra*, 482 U.S. 496, Birmingham cites no authority supporting his argument he should have been given notice of the identity of the victims who would make statements, the statements should have been under oath, and he was entitled to cross-examine the victims. In fact, the authority is to the contrary. At a sentencing hearing, statements which would be inadmissible on the issue of guilt may be received. (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859 [132 Cal.Rptr. 464, 553 P.2d 624].) For example, the court may consider the probation report although it is hearsay. (*People* v. *Lo Cicero* (1969) 71 Cal.2d 1186 [80 Cal.Rptr. 913, 459 P.2d 241].) If a defendant contends any part of the report is untrue, he must object at sentencing. (*In re Beal* (1975) 46 Cal.App.3d 94 [120 Cal.Rptr. 11].) While the hearing must be fundamentally fair (*People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187]), the Sixth Amendment right to confront and cross-examine witnesses does not apply to sentencing hearings. (*United States* v. *Fischer* (2d Cir. 1967) 381 F.2d 509, 511.)

Section 1191.1, which was enacted as part of Proposition 8, gives victims the right to appear at sentencing and express views concerning the crime, the defendant, and the need for restitution. The court must consider the statements in sentencing the defendant. Because victims' statements are made at sentencing rather than trial, the right to confrontation is not implicated and hearsay is not a ground for objection.

In *People* v. *Huber* (1986) 181 Cal.App.3d 601, 635-636 [227 Cal.Rptr. 113], the court allowed each of the victims to give a statement under section 1191.1. None of the victims testified under oath, and most simply read a statement to the court. The court denied a defense request for cross-examination. The reviewing court concluded there is no Sixth Amendment right to confrontation at the sentencing hearing. The sentencing court may,

consistently with the due process clause of the Fourteenth Amendment, consider responsible unsworn or out-of-court information relative to the circumstances of the crime and the convicted person's characteristics. (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754-755 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171].) "[F]undamental fairness does not require that [defendant] be allowed to challenge such statements by cross-examining the personnel who prepared the report . . . ." (*Id.* at p. 755 [discussing whether the defendant had a right to subpoena personnel of the Department of Corrections who prepared reports under § 1203.03].)

Here, the statements by the victims' mothers pursuant to section 1191.1 did not impair the right to a fundamentally fair hearing. The trial court did not err in permitting the mothers to make unsworn statements.

## II

Birmingham contends the trial court abused its discretion in imposing consecutive sentences. During the sentencing hearing, the court said: "Having evaluated the sentencing rules under [Cal. Rules of Court, rule] 425 and recognizing that there are multiple victims, the court [chooses] to run the sentence consecutive as a result of separate victims and the, for lack of a better word, the hurt that has been caused to multiple families as a result of this conduct."

Birmingham argues "hurt" to the victims' families is not a proper basis for imposing consecutive sentences. The prosecution argues this was harmless error since the trial court based imposition of consecutive terms on a legitimate ground, separate victims. California Rules of Court, rule 425 specifically identifies multiple victims as a basis for imposing consecutive terms. "Multiple victims" refers to multiple victims of a single crime or crimes committed during a single transaction. (*People* v. *Coulter* (1983) 145 Cal.App.3d 489, 492-493 [193 Cal.Rptr. 476].) Here, the two crimes occurred in a single transaction. "Multiple victims" was a proper reason for imposing consecutive terms. The trial court did not abuse its discretion in imposing consecutive sentences.

## III

Birmingham contends the trial court abused its discretion in denying probation. He recognizes probation is "an act of leniency, not a matter of right." (See *People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 638 [214 Cal.Rptr. 170].) The decision to grant or deny probation requires consideration of all the facts and circumstances of the case. (*People* v. *Axtell* (1981) 118 Cal.App.3d 246, 256-257 [173 Cal.Rptr. 360].) Birmingham argues the

trial court found him to be a danger to the community based on its misplaced reliance on an unsupported and erroneous assertion by a clinical psychologist, Dr. Murphy, that he was a pedophile.

Among the factors to be considered in determining whether to grant or deny probation is whether the failure to incarcerate the defendant "would unduly depreciate the seriousness of the crime." (*People* v. *Axtell, supra,* 118 Cal.App.3d at p. 255; see also *People* v. *Bolton* (1979) 23 Cal.3d 208, 217 [152 Cal.Rptr. 141, 589 P.2d 396].) Absent a clear showing the decision to deny probation is arbitrary or irrational, it is presumed the trial court acted to achieve legitimate sentencing objectives. (See *People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].)

Here, the trial court said it was denying probation because Dr. Murphy, whose opinion Birmingham introduced, reported he was an opportunistic pedophile who lacked insight into his problem and was therefore untreatable and a danger to the community. Given this opinion, the denial of probation was neither arbitrary nor capricious.

Judgment affirmed.

Benke, J., and Froehlich, J., concurred.