Filed 12/2/15  P. v. Ferrel CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELISSA FERREL et al.,<br><br>    Defendants and Appellants. | H040689<br>(Monterey County<br>Super. Ct. Nos. SS122471A & B) |

The main issue in this case is the scope of a criminal defendant's due process rights at a victim restitution hearing when the victim has died before the hearing and her estimates of the value of jewelry stolen were relayed to a third party who testified at the hearing.

*Facts*

In general, the facts of the underlying offenses are not in dispute.  We will recite them very briefly.  Over a period of approximately four months, defendants Melissa Ferrel and Jamie Garcia stole numerous pieces of jewelry, cash, checks that came from a garage sale, and a laptop computer from Gail Rose.  Rose was able to recover some of the jewelry.  In one instance, Rose paid $157 to a pawnshop to recover an emerald and diamond ring.  Previously, she had given Ferrel a check for $1,500 to recover the ring, but neither Ferrel nor Garcia ever returned the ring to her.

Ferrel pleaded guilty to one count of theft from an elder or dependent adult (Pen. Code, § 368, subd. (d)). [1] Garcia pleaded no contest to the same charge.

The probation officer prepared a report for the restitution hearing in which he listed the various items still missing and requested a restitution amount of $29,000—$17,100 for the 11 rings, $1,500 for the two bracelets, $7,100 for the necklace and pendent, $1,200 in United States currency, an unspecified amount for the checks, $1,500 for the check Rose wrote to Ferrel and $600 for the laptop computer. The probation officer noted that the executor of Rose's estate indicated that there were several bars of silver valued at $20,000 still missing.

At the restitution hearing, Salinas Police Officer Chris Swinscoe testified that the items and value listed in the probation report were based on what the victim had told him. He said that Rose had valued the rings at $17,100, two bracelets at approximately $1,500, the necklace and pendant at $1,100, silver bars at $6,000, and United States currency at $1,200. He explained that the victim reported that a $9,000 diamond ring had been stolen, but had been recovered, so that the total loss for that theft was not $9,000 but was rather $1,657—a check for $1,500 Rose wrote to Ferrel that was to recover the ring plus the $157 Rose paid to the pawnshop.

Officer Swinscoe stated that to figure out the amount stolen the victim "had to give it some thought" before she came up with the estimates. He said that when he interviewed Ferrel, she estimated that the value of what she had taken was $10,000, and that the watches she had taken were recovered when her mother paid $5,175 to a pawnshop to recover them.

Officer Swinscoe had no information about the value of the jewelry other than what was given to him by Rose. He stated that the victim could not recall any details about some of the jewelry and valuables that were stolen.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Austin Neale, a professional appraiser, testified for the defendants. He said that one cannot determine the fair market value of the jewelry or precious metals described in the probation officer's report without having a detailed description of them. It would be necessary to know such details as the gold content; the cut, color, and clarity of stones; and the size and number of stones before a value could be determined. Without further information, it was not possible to come up with either a fair market or replacement value. As to the bars of silver, Neale said that unless he knew how many there were, the weight of the bars, and the date of the loss, he would not be able to determine an accurate value. Neale stated that the wholesale price of jewelry is usually one-third of the retail price.

The prosecutor argued that the appraiser's testimony was irrelevant because the victim was entitled to what she paid for the jewelry regardless of its worth at the present time. The prosecutor asserted that restitution was designed to make the victims whole and not allow defendants to benefit from either a rise or fall in prices.

Garcia's counsel argued that the purpose of a restitution hearing was to give the defendant the opportunity to cross-examine the victim regarding how he or she arrived at a particular value. He pointed out that because Rose was deceased, that was not possible. Ferrel's counsel explained that the purpose of Neale's testimony was to demonstrate that there was insufficient evidence for the defense to respond to the restitution claims. He conceded that the fair market value and the replacement value were different. However, he argued that it was impossible to set a value because there was no ability to have a meaningful hearing and present evidence as to the values given for the 11 rings, the two bracelets, the necklace and pendant, and the silver bars.

The trial court agreed that it was impossible to effectively cross-examine the officer who was merely relaying statements. The court went on to say, "However, we have a deceased victim here. We do know that the—each defendant admitted to taking items." The court set restitution as follows—$17,100 for the 11 rings, $1,657 for an

emerald and diamond ring, $1,500 for two bracelets, $1,100 for the necklace and pendant, $6,000 for the silver bars, $600 for the laptop, and $1,200 for the missing cash. The total restitution order was $29,157 for which Ferrel and Garcia were jointly and severally liable.

*Discussion*

*Due Process*

Ferrel argues that she was denied due process because the trial court's restitution award included unverifiable values and she had no opportunity to challenge the figures. Similarly, Garcia argues that she was denied due process under the state and federal Constitutions because she was not afforded a meaningful opportunity to cross-examine on the subject of the value of the missing property.

"The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing." ' [Citations.]" (*People v. Cain* (2000) 82 Cal.App.4th 81, 86 (*Cain*).)

Repeatedly, California courts have held that a defendant does not have a Sixth Amendment right of confrontation at the sentencing stage of a criminal prosecution. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754 (*Arbuckle*); *People v. Birmingham* (1990) 217 Cal.App.3d 180, 184.) In *Arbuckle*, the California Supreme Court concluded that a criminal defendant does not have a constitutional right at a sentencing hearing to confront and cross-examine an employee of the Department of Corrections who prepares the probation report prior to sentencing. (*Arbuckle*, *supra*, at p. 754.)

In essence, Ferrel and Garcia argue that the restitution hearing was fundamentally unfair because there was no way to cross-examine Rose about the value she placed on the stolen items.

4

Certainly, the trial court violates a defendant's due process right at a hearing to determine the amount of restitution only when the hearing procedures are fundamentally unfair. (*Arbuckle*, *supra*, 22 Cal.3d at p. 754; *Cain*, *supra*, 82 Cal.App.4th at p. 87.) In this case, defendants had a full and fair opportunity to present affirmative evidence by an appraiser that it was impossible to place a value on the jewelry that was stolen without knowing far more details about the pieces that were stolen. Furthermore, defendants were fully aware of the pieces they stole and where they pawned them. They had the ability to contact the pawnshop owners and obtain an estimate of the value of the stolen pieces. Defendants have failed to prove that the hearing procedures were fundamentally unfair.

We note that the trial court is entitled to consider the probation report when determining the amount of restitution. Rose's estimates in the probation report about the value of her property must be accepted as prima facie evidence of value for purposes of restitution. (Cf. Evid. Code, § 810 et seq. [providing special rules of evidence applicable to any action in which the value of property is to be ascertained].) " 'Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . sentencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" (*People v. Baumann* (1985) 176 Cal.App.3d 67, 81.) This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. (*People v. Rivera* (1989) 212 Cal.App.3d 1153, 1160.) When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount. "[A] defendant's due process rights are protected if he [or she] is given notice of the amount of restitution sought and an opportunity to contest that amount; the rigorous procedural safeguards required during the guilt phase . . . are not required." (*Id*. at p. 1161.)

More importantly, Garcia and Ferrel cannot benefit from their own misconduct. (Civ. Code, § 3517 [no one can take advantage of his or her own wrong].) Their claim that they could not effectively cross-examine Rose's estimates of the value of the stolen property is due to the fact that the evidence was no longer available, as the pawnshop owners had sold it. Such a situation was the result of their actions. Defendants have not convinced us that there is a reason why thieves, who have, or last had, possession of the property, should not bear the burden of rebutting the victim's estimate of value. "If the [thieves have] disposed of the property and [are], like the victim, ill-poised to provide a detailed description or an appraisal, it is indeed awkward. But the situation is one of the [thieves'] own making, and as between the victim and the [thieves], the equities favor the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691 (*Prosser*).) We find no due process violation.

*Sufficiency of the Evidence*

Consistent with article I, section 28, of the California Constitution,[2] section 1202.4, subdivision (f), requires the trial court to award restitution to a victim who has suffered economic loss as a result of a defendant's conduct. The restitution amount should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) "The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*Giordano*, *supra*, 42 Cal.4th at p. 664.) However, once the prosecution has made a prima facie showing of the victim's loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*Prosser*, *supra*, 157 Cal.App.4th at p.

---

[2] This constitutional provision states that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const. art. I, § 28, subd. (b)(13)(A), (B); see also *People v. Giordano* (2007) 42 Cal.4th 644, 655 (*Giordano*) [examining intended scope of losses].)

6

691.)  The restitution order shall be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3); see *People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 [section 1202.4 must be construed broadly and liberally to compensate a victim for any economic loss that is proved to be the direct result of the defendant's criminal behavior].)

"[W]e review the trial court's restitution order for abuse of discretion." (*Giordano*, *supra*, 42 Cal.4th at p. 663.)  The trial court does not abuse its discretion "as long as the determination of economic loss is reasonable, producing a nonarbitrary result. Factors relevant to that determination will necessarily depend on the particular circumstances before the court." (*Id*. at p. 665.)  Accordingly, the order "will not be reversed unless it is arbitrary or capricious.  [Citation.]  No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).)

The trial court may consider almost any kind of information in calculating restitution.  (*People v. Phu* (2009) 179 Cal.App.4th 280, 283-284.)  " 'Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045, (*Keichler*).)  " 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)  In reviewing the evidence, we do not reweigh or reinterpret it; we determine only whether there is sufficient evidence to support the inference drawn by the trier of fact. (*Ibid*.)

Garcia argues that in this case there was virtually no evidence of the value of the jewelry and other valuables taken from Rose.  In essence, Ferrel makes the same

argument. Their argument is based on the premise that the evidence presented lacked sufficient detail for anyone to determine or challenge the value of the stolen pieces.

"[I]t is well settled that 'statements by the victims of the crimes about the value of the property stolen constitute "prima facie evidence of value for purposes of restitution." [Citations.]' " (*Prosser*, *supra*, 157 Cal.App.4th at pp. 690-691; see also *Gemelli*, *supra*, 161 Cal.App.4th at p. 1543 [court may accept, as prima facie evidence of loss, a property owner's statement about the value of stolen or damaged property].)

Garcia acknowledges the holding in *Prosser*, but argues that in *Prosser* the victims testified and gave descriptions of the jewelry stolen and their estimates of value. Garcia's attempt to distinguish *Prosser* is unavailing. Although the burden of providing an adequate factual basis for the claim remains on the restitution claimant (*Giordano*, *supra*, 42 Cal.4th at p. 664), the evidentiary threshold is not rigorous; the uncorroborated assertions of the crime victim and the recommendations of the governmental officer charged with documenting the claim constitute prima facie evidence of a restitution value. (*Prosser*, *supra*, 157 Cal.App.4th at pp. 684-685.) A victim's right to restitution for economic losses resulting from the defendant's criminal acts is to be construed broadly and liberally (*id*. at p. 686), and a victim restitution order should be reversed " 'only if the appellant demonstrates a clear abuse of discretion. [Citation.]' " (*Id*. at p. 690.) The court here employed a rational method to calculate Rose's economic losses—Rose's thoughtful and considered estimate of the value of the stolen items. In short, the trial court based its restitution order on the amount of loss Rose claimed she had suffered. Defendants did not submit any evidence contradicting the restitution amounts they now challenge on appeal. Rather, they presented evidence that an appraiser could not determine the value without more information. That does not mean, however, that Rose could not. The court made a factual finding as to the amount of restitution based on Rose's statements to Officer Swinscoe. Given that Rose's statements were

uncontradicted evidence of loss, the court's determination was based on a preponderance of the evidence.

As an intermediate appellate court, we are limited to a determination of whether " ' " 'there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.]' " (*Keichler*, *supra*, 129 Cal.App.4th at p. 1045.) Defendants could have,[3] but did not, come forward with any contrary information as to the value of the property stolen. Thus, we find that there was substantial evidence to support the trial court's restitution order. Since there was "a factual and rational basis for the amount of restitution ordered by the trial court" (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562), the order must be affirmed.

*Disposition*

The restitution order is affirmed.

---

[3] Defendants were fully aware of the pieces they had stolen, to the pawnshops to which they were taken and the amount of money they received at the pawnshops. If some of the pieces were not as Rose described them, it was within the defendants' knowledge and ability to bring forth contrary evidence. This they failed to do.

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.




_____

MIHARA, J.




*The People v. Ferrel*, *et al*.
H040689