Filed 11/30/22  P. v. Montano CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ELIZABETH LORAIN MONTANO,<br><br>    Defendant and Appellant. | D079690<br><br><br>(Super. Ct. No. SCD290824) |

APPEAL from a judgment of the Superior Court of San Diego County, Yvonne E. Campos, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Jennevee H. de Guzman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

Elizabeth Lorain Montano robbed three businesses over a period of six weeks using a black airsoft pistol. She was arrested and eventually entered a guilty plea on four counts of robbery (Pen. Code,[1] § 211). Thereafter, the trial court sentenced Montano to four years in prison. On appeal, Montano asserts the court abused its discretion by denying her probation. Alternatively, she argues that resentencing is required for the trial court to consider whether to impose the lower term for her principal offense under recent changes to section 1170, which now requires leniency in sentencing for victims of domestic violence. We reject Montano's assertion that the trial court abused its discretion by denying probation, but agree that remand for resentencing in light of the recent changes to the law is required.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Between May 15 and June 23, 2021, Montano robbed four victims at three separate businesses. During each robbery, Montano brandished a black gun, which was later determined to be an airsoft gun used to fire BBs, and demanded that the employees at each business give her money.

The first robbery took place on May 15, 2021, at a Metro T-Mobile store in San Diego. Montano entered the store wearing a dark hooded sweatshirt and a black face mask. After asking an employee about iPhone promotions, Montano told the employee she had a gun and demanded all the money in the cash register or she would shoot. The victim then told Montano she did not believe Montano had a weapon. Montano responded by opening a bag she was carrying and showing what the employee described as a black semi-automatic handgun. Montano also told the victim she would "blow her

---

[1] Subsequent undesignated statutory references are to the Penal Code.

[2] Because Montano pled guilty and there was no trial, the facts are taken primarily from the probation report and Montano's plea hearing.

2

away." The victim was afraid and unlocked the cash register drawer. Video surveillance captured the incident and showed Montano hoist herself over the counter and grab approximately $1,000 in cash. During her guilty plea, Montano stated that she went into the "store and demanded money from the girl behind the counter" and took property "by the use of fear."

On the evening of June 21, 2021, Montano entered a 7-Eleven in San Diego. She was dressed in a white hoodie, black pants and gloves, and wore a mask. Montano asked for lottery tickets, then followed a female clerk behind the counter and said something like "open the drawer" and "give me the money." The female clerk and a male employee saw Montano holding a black handgun that the man identified as a Glock 17. Montano pointed the weapon at the woman and said, "open the drawer bitch!" and pushed her several times for moving too slowly. The male clerk opened his register and Montano took $129 in cash and ran out of the store. During her guilty plea to the two charges of robbery based on this encounter, Montano admitted that, in a "classic stickup" she went into the 7-Eleven, and "demanded money" from the two clerks. She stated "I brought in a BB gun, and I went in there and I told the lady that I was robbing her. And that I demanded money from the cash register."

Two nights later, Montano entered a nail salon in San Diego, again in dark clothing and a black face mask. She approached the manager, who was standing behind the cashier's counter, and yelled, "This is an armed robbery!" and pointed a "black firearm" at the manager. Montano then placed a bag on the counter and ordered the victim to fill it with money. The manager, who police described as "frantic," feared for her life and complied. Montano told the manager to "hurry up," and the manager put about $800 into the bag. Montano then left the salon. In her guilty plea to the offense, Montano

admitted she "went in [the nail salon] with the same airsoft gun and demanded money from the woman behind the desk."

Montano was eventually identified by the police and arrested. In a hotel room where Montano was staying, investigators discovered one of the hoodies she wore during the robberies, a black pistol, and a demand note that read, "Put all the money in the bag, quietly! Please, no one has to get shot, thank you."

In October 2021, Montano pled guilty to four counts of robbery (§ 211; counts 1–4). The probation report submitted before sentencing recommended the court deny probation and impose a prison term of eight years, consisting of the upper term of five years on the principal count, count 1, and consecutive one-year terms, one-third the middle term, for counts 2 through 4. The probation officer who evaluated the case determined that Montano had no significant mitigating factors and several aggravating factors that weighed in favor of an upper-term sentence for the principal count. The report listed as aggravating factors that: (1) Montano was armed during the robberies, (2) she was on probation at the time of the crimes, (3) the manner in which the crime was carried out indicated planning and sophistication, and (4) Montano's prior performance on probation was unsatisfactory.

The probation report identified three factors supporting probation: (1) Montano was willing to comply with probation, (2) she had the ability to comply with probation based on her age, health, and mental faculties, and (3) she showed remorse for her crimes. The report concluded that these factors were outweighed by those supporting denial of probation, including (1) the serious nature and circumstances of the crimes, (2) the fact that Montano brandished a weapon, (3) that Montano committed the crimes on her own, (4) the emotional injury the crimes inflicted on the victims, (5) that

4

she was on probation at the time of the crimes, (6) her substance abuse made compliance with probation less likely, and (7) that she victimized four separate individuals.

Montano submitted a statement in mitigation seeking probation based in large part on her history of domestic violence at the hands of the father of the two youngest of her three children. The mitigation statement outlined a brutal history of violence perpetrated by the father against Montano and her children, including the 2019 rape of her oldest daughter, who was twelve years old at the time. The statement also explained that Montano had lost custody of her children as a result of the violence, and that she was desperate to change her life and reunify with her children. Montano submitted the recommendation of a drug addiction specialist who evaluated her and opined that she would benefit from treatment. In addition, Montano submitted several letters of support from family members and her current boyfriend.

At the sentencing hearing, the prosecutor recommended 365 days in local custody, and a suspended sentence and probation. She explained that it was a difficult determination, but she believed Montano should be given a chance to reform her life and reunify with her children. The prosecutor also pointed to the lack of violence in Montano's own criminal history and noted that Montano expressed remorse and took responsibility for her crimes.

After hearing additional argument from Montano's defense counsel, the court denied probation and sentenced her to state prison for four years, consisting of the middle term of three years for count 1; a consecutive one-year term for count 2; and two concurrent one-year terms for counts 3 and 4. In explaining its decision, the court acknowledged Montano had accepted responsibility for the crimes and that she had suffered trauma in her life, but determined the seriousness of Montano's crimes and the impact on the

victims, as well as Montano's persistent drug abuse, weighed in favor of denying probation.

## DISCUSSION

### I

Montano asserts that the trial court abused its discretion by denying probation because the factors favoring probation overwhelmingly outweighed those supporting its denial. She also argues the court improperly relied on its experience with other defendants to deny probation. The Attorney General responds that the trial court's decision to deny probation was well within its broad sentencing discretion.

### A

"[A] grant of probation is an act of grace or clemency, and an offender has no right or privilege to be granted such release. [Citation.] Stated differently, '[p]robation is not a right, but a privilege.'" (*People v. Moran* (2016) 1 Cal.5th 398, 402.) "[I]n most circumstances the trial court has broad discretion to choose probation when sentencing a criminal offender. A reviewing court will defer to such choice absent a manifest abuse of that discretion." (*Ibid.*)

"The decision to grant or deny probation requires consideration of all the facts and circumstances of the case." (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 185.) California Rules of Court, rule 4.414[3] provides that the "[c]riteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant," and sets forth a list of criteria that the court may consider. A trial court may also consider additional criteria not listed in the rules, provided that those criteria are reasonably related to the court's decision. (Rule 4.408(a).)

---

[3]     Subsequent rule references are to the California Rules of Court.

A trial court abuses its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for [the] decision." (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978.)

B

Here, the trial court properly exercised its discretion. The court's denial of probation was in line with the recommendation of the probation department, and, at the sentencing hearing, the court clearly explained its rationale. The court stated it had considered the mitigation statement as well as Montano's other submissions, including the drug specialist's opinion and the letters of support from her family members. The court explicitly credited Montano for admitting her guilt and expressing remorse for her actions.

However, the court found the aggravating factors outweighed those in mitigation. In particular, the court pointed to the circumstances of the crime and the fear created by Montano's use of an airsoft pistol that the victims believed was a semi-automatic handgun or Glock. Other aggravating factors before the court also supported its decision. Montano had several prior offenses, though nonviolent, and she was on probation at the time of the current offenses. (See rule 4.414(b)(1), (2).) Further, Montano had failed prior attempts at drug rehabilitation. (See rule 4.414 (b)(4) ["Ability to comply with reasonable terms of probation as indicated by the defendant's

7

age, education, health, mental faculties, *history of alcohol or other substance abuse*, family background and ties, employment and military service history, and other relevant factors."], italics added.)

Montano also asserts that the trial court improperly relied on its own experiences with other defendants and litigants in denying probation. She points to the court's statement that it had seen probation violations be minimized after suspended sentences were imposed and that as a juvenile and drug court judge, the court had seen treatment programs fail. These statements, however, were made in the context of analyzing Montano's situation; they do not show that the court was holding her responsible for the conduct of others. Further, reliance on an erroneous factor does not warrant reversal here, where the court identified multiple aggravating factors supporting its denial of probation. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper."].)

In sum, the mitigating factors Montano relies on for her argument were presented to the trial court. The court weighed these factors, but ultimately concluded that probation was not appropriate. Montano argues this was the wrong conclusion, essentially asking this court to reweigh the mitigating and aggravating factors and conclude probation is mandated. That is not our role. (See *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 825 ["In reviewing [the determination to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court."].) On the record before us, we cannot say the trial court's denial of probation was arbitrary, capricious, or in excess of the bounds of reason.

8

II

Montano next argues remand for resentencing is required for the trial court to consider recent amendments to section 1170 that became applicable to Montano's case after judgment. The Attorney General concedes the change in the law applies retroactively to Montano, but argues that on this record remand is unnecessary. Specifically, he notes that Montano's mitigation statement addressed the new law, establishing the trial court was aware of the changes at the time of sentencing.

Section 1170 was amended, effective January 1, 2022, to require the sentencing court to impose the lower term if "[p]rior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6)(C).) Under the new law, the court can still impose a higher term if it "finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid*.) The Attorney General concedes this change in the law applies retroactively to Montano, as the amendment is ameliorative and the judgment was not final when it became effective. The concession is well-taken. (See *People v. Flores* (2022) 75 Cal.App.5th 495, review den. June 15, 2022, S274232.)

Ordinarily, remand is the appropriate course when retroactive changes in law affect the sentencing court's discretion. This is so because " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391), and " 'a court that is unaware of its discretionary authority cannot exercise its informed discretion.' " (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 (*McDaniels*).) An exception to this

9

requirement exists, however, in the circumstance where "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez*, at p. 1391.) When " ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' " (*McDaniels*, at p. 425; see *People v. Flores* (2020) 9 Cal.5th 371, 431–432 [holding remand to resentence defendant to exercise sentencing discretion conferred by statutory amendment would be an idle act].)

In the Attorney General's view, the record is clear on this issue because the mitigation statement submitted by Montano's defense counsel raised the change in the law and argued it should be applied to Montano since her case would not be final by the time the law took effect. Montano does not contest that her counsel briefed the issue before sentencing. She argues, however, that the record is insufficient to show the court considered her history of trauma and abuse in selecting the middle term sentence on the principal offense because the issue was not addressed at the sentencing hearing. Further, the court made no statement on the record indicating it was deviating from the low term because it found the aggravating circumstances outweighed the mitigating circumstances, and that imposing the lower term was "contrary to the interests of justice." (§ 1170, subd. (b)(6), (c).)

As stated, remand for resentencing is required "unless the record shows that the trial court *clearly indicated* when it originally sentenced the defendant that it would not in any event have [exercised its discretion in a manner favorable to the defendant]." (*McDaniels, supra*, 22 Cal.App.5th at p. 425, italics added.) Although the issue was set forth in the mitigation statement, we agree with Montano that her case should be remanded for

10

resentencing on this issue since the law was not in effect at the sentencing hearing. Although the record may suggest it is unlikely the trial court will choose the lesser sentence, it does not clearly show that the court will not. Accordingly, we remand for resentencing and express no opinion as to how the trial court should exercise its discretion.

## DISPOSITION

The sentence is reversed and the cause is remanded to allow the superior court to consider the application of section 1170, subdivision (b)(6)(C). In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

11