[No. G038481. Fourth Dist., Div. Three. Dec. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DIANA DARLENE PROSSER, Defendant and Appellant.

## COUNSEL

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOORE, J.**—Defendant Diana Darlene Prosser, a real estate broker, was convicted of nine counts of first degree residential burglary, two counts of second degree commercial burglary, and one count of receiving stolen property. On appeal, she challenges restitution orders in the respective amounts of $162,120 and $12,600, pertaining to stolen jewelry. Defendant contends the trial court erred in failing to itemize the component parts of each lump-sum figure and in relying on the opinions of the victims in establishing the value of the stolen items.[1]

■ We disagree and affirm. When an owner of stolen personal property testifies as to its value at a restitution hearing, his or her testimony constitutes prima facie evidence of value. (See *People v. Foster* (1993) 14 Cal.App.4th

---

[1] In a companion appeal, *People v. Prosser* (Dec. 4, 2007, G037953) (nonpub. opn.), we address whether the trial court erred in ordering that defendant not act as a real estate broker, agent or salesperson in any real estate transaction.

939, 946–947 [18 Cal.Rptr.2d 1].) The burden then shifts to the defendant to demonstrate that the proffered value is erroneous. (*Id.* at p. 947.) In this case, the owners of property testified as to the loss of hundreds of thousands of dollars in jewelry. Their testimony constituted substantial evidence of value, even though it was unsupported by receipts or appraisals, and even though a detailed description of each piece of jewelry was not given. It was up to defendant to obtain more particular descriptions through cross-examination, to seek whatever documentation she thought would be necessary to challenge the proffered values, and to object when the court ordered restitution without assigning a particular value to each individual piece of jewelry stolen. Having failed to do so, she did not meet her burden.

I

FACTS

Defendant was charged by information with nine counts of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a)), two counts of second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)), and one count of receiving stolen property (Pen. Code, § 496, subd. (a)). It was alleged that she utilized the lockboxes on homes listed for sale to gain entry into those homes and steal property once inside. It was further alleged that the police recovered over $400,000 worth of stolen property from defendant's residence.

Defendant pled guilty to all 12 counts and was sentenced to two years in state prison. Defendant also stipulated to pay specified sums in restitution to four of the victims. However, no stipulation was made with respect to two other victims, i.e., A.R. and J.K.

At the January 19, 2007 restitution hearing, A.R. and J.K. each testified as to the items stolen, and as to their estimated value of each. However, neither A.R. nor J.K. had documentation available as to the value of the items in question. Defendant's counsel objected on foundational grounds as to the testimony concerning estimated value. At the conclusion of the hearing, the court continued the matter to March 23, 2007. It invited A.R. and J.K. to present any documentation that they might be able to obtain with respect to the value of the items. In addition, the court suggested that J.K. go to several watch dealers or brokers and have them pull out some catalogs and see if

they could give her prices on watches comparable to the three that were stolen.

At the March 23, 2007 hearing, the People noted that A.R. had not provided any documentation, but that J.K. had submitted a letter regarding her efforts to obtain valuations of the three watches. Defendant's counsel objected to the letter on the basis of hearsay and lack of foundation. The court commented that it was difficult for A.R. and J.K. to provide receipts for the stolen items, inasmuch as most of the items were gifts. At the conclusion of the hearing, the court ordered the payment of restitution to all six of the victims in question, including $12,600 with respect to A.R. and $162,120 with respect to J.K. Defendant challenges only the restitution awards in favor of A.R. and J.K.

II

DISCUSSION

A. *Introduction:*

Defendant asserts that the court violated her due process rights in ordering her to pay $12,600 in restitution to A.R. and $162,120 in restitution to J.K., without specifying the amount it awarded with respect to each item of property stolen. She also contends that the court erred in relying on the unsubstantiated opinions of A.R. and J.K. in arriving at the figures. We address her points in turn.

" 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 467 [23 Cal.Rptr.3d 871].) "In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a

contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]" (*Id.* at pp. 468–469.)

B. *Analysis:*

(1) *A.R. evidence and order*

A.R. testified that three of the items stolen were a Tiffany diamond solitaire engagement ring, a Tiffany diamond pendant, and a Tiffany friendship ring. She estimated the value of the round stone, single-prong, classic engagement ring to be between $6,000 and $10,000. The ring was given to A.R. by her ex-husband. A.R. stated that the pendant was approximately 40 or 50 points and estimated the value to be $1,500 or $1,600. She estimated the value of the friendship ring to be $3,000, based on a "revised version of it" she saw in a recent Tiffany's catalog. A.R. received the pendant and the friendship ring upon her college graduation. The Tiffany pieces were not insured and A.R. did not have appraisals for them.

A.R. also testified that she had some gold necklaces and a gold bracelet that were stolen, but she did not attempt to place a value on them for the purposes of restitution. In addition, she testified that hundreds of pieces of gold jewelry belonging to her mother were stolen. She said that the items were primarily heirlooms and that it would be impossible to put a value on them. Consequently, A.R. sought restitution only for the three Tiffany items belonging to her. The court awarded restitution to A.R. in the amount of $12,600.

On the record, the court stated that it would split the difference on the estimate of the value of the ring, placing a value of $8,000 on it. With reference to the pendant, the court said, "Well, she was very clear. The diamond pendant from Tiffany was $1,600." It also said: "And then the friendship ring was $3,000." The total of these three figures is $12,600. The record thus belies defendant's assertion that the court did not specify how it arrived at the restitution amount for A.R.

(2) *J.K. evidence and order*

J.K. testified that the total value of the jewelry stolen from her was about $300,000. She explained that she had received substantial amounts of jewelry from family members because Korean families traditionally give jewelry as gifts for marriages, births, and children's birthdays. In addition to the jewelry received for her marriage, the births of her children, and her children's birthdays, she had received jewelry from her parents for her high school and

college graduations. She stated that her box full of jewelry was their biggest asset, next to their home. Because most of the pieces of jewelry had been given as gifts, she did not have receipts for them, and she did not have them appraised or insured.

J.K. said that she received seven sets of matching jewelry when she got married. Most of the sets contained a necklace, earrings, a bracelet and a ring. She had two ruby sets, two diamond sets, one emerald set, one sapphire set, and one pearl set. J.K. testified that her mother-in-law purchased seven sets for her, at a total price of more than $200,000. However, she clarified that the pearl set came from her own mother. J.K. thought that the pearl set was probably worth about $1,000.

Also, J.K. said that the stolen box of jewelry contained more than 10 hair decorations with crystals. Most of the hair decorations were imported from France. Some of them were gifts from family or friends, and some of them she had purchased herself. J.K. believed the hair decorations cost at least $300 apiece, the minimum price she had paid for the ones she purchased.

As is tradition, family members and friends had given pure gold rings, bracelets, necklaces, and ornaments as gifts for J.K.'s two children. She said that each child had more than 30 pieces of pure gold jewelry. Because she had purchased similar items herself to give as gifts to others, she estimated the cost of each piece to be about $60.

J.K. also had two gold birds, symbolizing marriage. She had received them when she got married. They were probably worth about $60 apiece. In addition, there were a lot of other miscellaneous items, such as pendants from her mother and friends. There were also two gold ornaments worn with traditional Korean gowns. The ornaments were worth about $100 to $150 apiece. Also, a $100 American Express gift certificate was taken.

In addition, three watches were stolen—one Rolex, one Cartier, and one Patek Philippe. The Rolex was a man's watch that had been passed down from J.K.'s family. The watch had a round face and the band was gold in the middle with stainless steel around the outside. The Cartier was also a man's watch, a gold Santos model with a square face. Cartier does not make that particular watch anymore. The Patek Philippe was a platinum woman's watch with diamonds around the face. J.K. estimated that each of the three watches was worth approximately $30,000 to $35,000, because she had seen some similar watches that were selling for about that price.

In her letter, J.K. stated she found that many jewelers were unwilling to give written estimates of value for items they had never seen. However, she

was able to obtain business cards from two jewelers, each of whom wrote down an estimate for a particular type of watch. A jeweler at Ben Bridge wrote that a new GMT, which J.K. explained was a gold and steel Rolex, would be upwards of $8,000. According to J.K., that jeweler told her to call Rolex directly for a valuation and she then did so. J.K. further stated that Rolex in New York, at a telephone number she noted for the court, told her the replacement value was $8,925.

J.K. also provided the business card for a Cartier jeweler. The note on the back of that business card indicated that a Santos gold watch was over $16,000. According to J.K., that figure was for the latest selling price, but the jeweler said that the watch probably sold at over $20,000 when it first came out.

Finally, J.K. said that no one would give her a business card with a quotation as to a Patek Philippe watch, but that three different jewelers told her that it was probably worth over $57,000. She also said that she went on the Internet to see if she could find pictures of the watches, but that she had no luck.

In arriving at a total restitution figure, the court noted that J.K. estimated the collective value of the seven jewelry sets to be $200,000. The court commented: "Obviously, I'm going to discount that. I'm going to have to." It further stated: "[The] court will order restitution in the amount of $162,120. I can tell you, counsel, that I discounted the $100,000. So, basically, there's $62,000 worth of losses on everything but all those jewelry sets. And I have to tell you that that is a conservative, scaled down to the benefit of the defendant number. I think the victim was asking for $300,000. But that would be the amount for [J.K.]" In other words, J.K. asked for $200,000 with respect to the seven jewelry sets and $100,000 for the remaining jewelry, but the court discounted the seven jewelry sets to $100,000 and discounted the remainder of the items to $62,120.

Thus, the record reflects that the court articulated the breakdown of the component parts of the restitution award into two broad categories, the seven jewelry sets, on the one hand, and the watches and other items, on the other. Defendant is correct that the court did not set a value for each item within a category, or even provide a detailed description of each item. However, defendant's argument that the court erred in failing to do so has been waived, for she failed to raise it at the restitution hearings, when the court could have addressed any objections she made. (*In re S. S.* (1995) 37 Cal.App.4th 543, 547–548 [43 Cal.Rptr.2d 768].)

Even if the argument had not been waived, however, defendant still would not prevail. As indicated at the outset, "[a] trial court's determination of the

amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion. [Citation.] No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil action. [Citation.] In determining the amount of restitution, all that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' [Citations.] The order must be affirmed if there is a factual and rational basis for the amount. [Citation.]" (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382 [27 Cal.Rptr.3d 815].)

Here, there is a factual and rational basis for the amount assigned to each of the two broad categories. J.K. testified that most of the items were gifts and that they were uninsured. Therefore, she did not have any documentation providing detailed descriptions of the items—she had neither receipts nor appraisals for insurance purposes. However, with respect to the first category, J.K. testified that her mother-in-law spent over $200,000 on the matched jewelry sets, consisting of rubies, diamonds, emeralds and sapphires. The court discounted this amount by half, ordering the payment of $100,000 in restitution for these items. With respect to the second category, J.K. initially testified that she believed the three watches alone were worth about $30,000 to $35,000 apiece. After conversations with various jewelers, she presented revised estimates of over $57,000 for the Patek Philippe, over $16,000 for the Cartier, and over $8,000 for the Rolex. In addition, she testified to having at least $3,000 worth of hair decorations, $3,600 in children's gold jewelry, gold birds worth a total of $120, other gold ornaments with a total value of at least $200, a $100 American Express gift certificate, and other items for which she specified no value. In the second category, then, J.K. specified items having a total value of over $88,020. The court discounted this total to $62,120. We cannot say that this was an irrational thing to do or that it was lacking in any factual basis.

### (3) *Victim opinions*

The problem, defendant says, is that the court based the assigned values on the opinion testimony of J.K., just as it based the assigned values underlying the award to A.R. on the opinion testimony of A.R. Defendant contends that these opinions lacked foundation and were no more than guesses as to value. She asserts that the court erred in relying on these improper opinions.

■ However, it is well settled that "statements by the victims of the crimes about the value of the property stolen constitute 'prima facie evidence of value for purposes of restitution.' [Citations.]" (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [29 Cal.Rptr.3d 120]; see also *In re S. S., supra,*

37 Cal.App.4th at p. 547.) Once the victim has made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886–887 [135 Cal.Rptr.2d 466]; *People v. Foster, supra*, 14 Cal.App.4th at p. 947.)

Were the law otherwise, a victim in a case such as this would be without a means for recovery. A victim who has no receipts or appraisals for property received by gift, and who no longer has possession of the property, may have no way of providing a detailed description or obtaining an appraisal. Defendant has not convinced us that there is a reason why the thief, who has, or last had, possession of the property, should not bear the burden of rebutting the victim's estimate of value. If the thief has disposed of the property and is, like the victim, ill poised to provide a detailed description or an appraisal, it is indeed awkward. But the situation is one of the thief's own making, and as between the victim and the thief, the equities favor the victim.

At the continued restitution hearing, the trial court, citing *People v. Foster, supra*, 14 Cal.App.4th 939, warned defendant that it was her burden to show that the victims' estimates of value were erroneous. Defendant disagrees with this proposition and asserts that *Foster* is distinguishable from the case before us. She says that the rule of *Foster* applies only when restitution is a condition of probation. She argues that under *People v. Rubics* (2006) 136 Cal.App.4th 452 [38 Cal.Rptr.3d 886], a defendant sentenced to prison is entitled to greater due process protections than a defendant granted probation—that is to say, where a defendant is sentenced to prison, the restitution award is limited to economic damages resulting from the crime of which he or she was convicted, whereas a restitution award imposed on a probationer is not so limited. The *Rubics* court stated that "courts have far greater leeway in selecting appropriate restitution as a condition of probation . . ." than in setting restitution where the defendant is sentenced to prison (*People v. Rubics, supra*, 136 Cal.App.4th at p. 459), but where the defendant is sentenced to prison, "restitution must be for economic damages resulting from the crime of which [the defendant] was convicted, not merely those 'reasonably related' to the crime" (*id.* at p. 460). In the case before us, there is no argument that restitution was awarded for anything other than economic damages caused by the crimes of which defendant was convicted. Nothing in *Rubics* makes the shifting burden inapplicable here.

■ Even so, defendant continues to insist that the victims' opinions were improper in the first place. She explains her view that the use of victim testimony to establish the value of property is based on Evidence Code section 813, which specifically permits the "value of property" to be shown by the opinion of the owner of the property. (Evid. Code, § 813, subd. (a)(2).)

Defendant also asserts that Evidence Code section 813 is limited by Evidence Code section 814, which provides: "The opinion of a witness as to the value of property is limited to such an opinion as is based on matter perceived by or personally known to the witness . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion as to the value of property . . . ." (Evid. Code, § 814.) Defendant implies that an opinion of a property owner must, under section 814, be based on the same foundation as an opinion of an expert witness.

■ Defendant misapprehends the application of these Evidence Code provisions in the context at hand. These provisions apply to the valuation of real property or any interest therein, or "[r]eal property or any interest therein and tangible personal property valued as a unit." (Evid. Code, § 811.) They do not restrict the testimony of an owner of personal property at a restitution hearing. More particularly, they do not make it inherently improper for a court to base a stolen property valuation on the uncorroborated statement of the property owner. (*People v. Foster, supra*, 14 Cal.App.4th at p. 948.)

■ "The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when [he or she has] notice of the amount of restitution claimed . . . , and . . . has an opportunity to challenge the figures . . . at the sentencing hearing." ' [Citations.]" (*People v. Cain* (2000) 82 Cal.App.4th 81, 86 [97 Cal.Rptr.2d 836]; see also *In re S. S., supra*, 37 Cal.App.4th at p. 547.) " ' "Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . [. S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source . . . whence it comes." [Citation.]' [Citation.]" (*People v. Foster, supra*, 14 Cal.App.4th at p. 947.)

Here, the court held a restitution hearing at which both A.R. and J.K. testified, giving their descriptions of the jewelry and their estimates of value. Defendant was certainly apprised at that time of the amount of restitution claimed. If defendant did not feel that A.R. and J.K. had given sufficiently detailed descriptions of the items of jewelry for her to be able to rebut the proffered values, she could have sought greater detail on cross-examination. Furthermore, at the conclusion of the first restitution hearing, the court continued the matter to a subsequent date. Defendant thus had another opportunity to challenge the victims' figures. If defendant felt that the only way to challenge the figures was to obtain documentation describing the stolen items, then it was up to her to seek receipts or other materials from the donors of those items in order to meet her burden. If she needed a continuance for that purpose, it was up to her to request it. Defendant was not deprived of due process of law.

## III

## DISPOSITION

We affirm the judgment.

Sills, P. J., and Fybel, J., concurred.