Filed 9/4/15  P. v. Avila-Castro CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B256978 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA102377) |
| v. | |
| DIANA LISETH AVILA-CASTRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Cynthia L. Barnes for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and Rene Judkiewicz, Deputy Attorneys General, for Petitioner and Respondent.

_____

## INTRODUCTION

Defendant and Appellant Diana L. Castro appeals from the trial court's judgment ordering Defendant to pay restitution in the amount of $417,663.95 to the victims of her grand theft by embezzlement, to which she pleaded no contest. Defendant asserts that the court abused its discretion in making the restitution order because the amount awarded was in part based on speculation. Defendant asserts that the State failed to prove with sufficient evidence that certain losses were caused by Defendant's criminal conduct. We affirm because substantial evidence in the form of victim testimony supported the court's restitution order.

## FACTS AND PROCEDURAL BACKGROUND

From 2008 to May 2013, Defendant worked as the accounting manager for N.C. Star, Inc., a business owned by Carson Cheng that imported sporting goods from China into the United States. Defendant had access to N.C. Star's business accounts, and utilized N.C. Star's credit cards to make purchases for her personal benefit without authorization from N.C. Star or Cheng. Cheng discovered Defendant's embezzlement in May 2013. Defendant pleaded no contest to two counts of grand theft by embezzlement under Penal Code[1] section 487, subdivision (a), and admitted that in the commission of the theft, she took property of a value exceeding $200,000 within the meaning of section 12022.6, subdivision (a)(2).

At the restitution hearing, Cheng testified about Defendant's role in managing the company's finances and her access to the company's credit cards. Cheng testified how he discovered many unauthorized charges on several company credit cards, determined that they were made by Defendant for her personal use, and fired Defendant. Cheng testified that the unauthorized charges by Defendant totaled $417,663.95. This number comprised of $133,839.18 in online postage purchases on postagestamps.com, $35,185.75 in purchases on gift card exchange websites, $53,366.86 in PayPal purchases,

---

[1]     All subsequent statutory references are to the Penal Code, unless otherwise indicated.

and $195,272.16 in other online purchases. Cheng based his calculations on his review of the credit card accounts, his notes, his authorizations, and his discussions with company managers who held company credit cards in their name. Many of the purchases were made on Capital One and Bank of America company-issued credit cards that were under the names of several managing employees, and on Cheng's Costco credit card. Cheng testified that when he confronted Defendant, she admitted that she stole from the company and told him that she "saw the opportunity." Defendant then offered to pay Cheng $300,000 so that Cheng would not press charges.

In response, Defendant testified that although she made purchases on one particular employee's credit card, she did not recall making purchases using other employees' credit cards. Defendant denied using her employee credit card for personal purposes and denied accessing other employees' cards. Defendant also denied having access to the company account to make the online postage purchases, and denied sending any packages for her personal gain or use. Defendant admitted that she told Cheng she was responsible for a certain amount of damages, opined that she was never given the chance to compute the damages, and asserted that she was only responsible for a portion of the damages claimed by Cheng. Defendant admitted that she had made online purchases but did not keep a record of her spending.

The court evaluated the testimony and stated that Cheng did his best to itemize the amounts stolen by Defendant and provide the court with the amount of the company's loss. In contrast, the court noted that Defendant "was unable in her own testimony to even give the court an estimate as to the amount of money that she took from N.C. Star. [Defendant] wouldn't even render a guess, simply just said, I don't know." The court explained that it was concerned that "[i]f [Defendant] doesn't know how much money she took from N.C. Star, how can she tell us that these amounts are not accurate?" The court subsequently found that the amount of losses provided by N.C. Star and Cheng were accurate. The court then sentenced Defendant to three years, four months in county jail, and ordered Defendant to pay $417,663.95 to N.C. Star and Cheng.

## DISCUSSION

The sole issue on appeal is whether the amount of restitution ordered by the court was supported by substantial evidence. "In reviewing the sufficiency of the evidence [to support a factual finding], the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citations.]" (*People v. Baker* (2005) 126 Cal.App.4th 463 468–469.) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499.)

Pursuant to Penal Code section 1202.4, subdivision (f), "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." "Once the victim has made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691.)

Here, Defendant asserts that the State did not establish by sufficient evidence that the unauthorized charges appearing on fellow employees' Capital One credit cards and the charges made online at postagestamps.com were the result of Defendant's criminal behavior. Defendant argues that "[t]he victim's surmise and speculation that [Defendant] was somehow the cause and responsible for these charges and purchases should not have been a substitute for the required amount of evidentiary proof."

4

We disagree as substantial evidence supports the court's findings. In regard to the Capital One credit card purchases, Cheng testified that he provided Defendant with one of the several Capital One credit cards on the company's account issued to N.C. Star managers. Employees were authorized to use Capital One credit cards solely for company travel-related expenses. Cheng testified that without his knowledge, Defendant made herself an administrator of the company's Capital One account. As an account administrator, Defendant was the only person, other than Cheng, who had access to each employee's credit card number. Cheng explained that Defendant used other employees' credit card numbers to make unauthorized online purchases for her own personal benefit. Cheng identified the charges that were attributable to Defendant by reviewing his own notes regarding charges he authorized and discussing the charges with each employee who was issued a card.

As to the postagestamps.com purchases, Cheng determined that these were unauthorized because his company shipped merchandise primarily via UPS, averaging between $7,000 to $10,000 per week in UPS charges. He testified that the company infrequently used the United States Postal Service, averaging only $400 to $500 in postage per month. Cheng personally knew this amount because 80 to 90 percent of the time, he and his warehouse manager personally delivered the packages to the post office. Cheng testified that in reviewing the bills, he saw that Defendant had purchased anywhere from $100 to $500 in a single day in postage, and the amounts of postage billed went well above the $400 to $500 authorized amount. Cheng calculated the online postage charges attributable to Defendant's unauthorized purchases by adding up the postage charges over the authorized $400 to $500 monthly postage. Cheng stated that Defendant never had authority to make any postage purchase online or otherwise.

We conclude that Cheng's testimony and accounting of Defendant's unauthorized expenditures as to the Capital One credit cards and the online postage purchases constitutes substantial evidence supporting the court's restitution order. "Section 1202.4 does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 [The probation officer's report with a handwritten

statement from the victim listing the grand total losses was sufficient to make a prima facie showing of the victim's loss.].)  A victim's uncorroborated statement of losses is sufficient to make a prima facie showing of his or her loss.  (*Ibid*.)  " 'This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.)  Here, Cheng's testimony, which set forth his company's losses caused by Defendant's theft and his method for assessing Defendant's unauthorized purchases, made a prima facie showing of N.C. Star's losses.

Because the State met its burden in making a prima facie case, the burden shifted to Defendant to show that the amount of the loss was less than that claimed by N.C. Star. As the court pointed out, Defendant could not tell the court how much she embezzled, and simply denied making purchases for online postage and using particular employee's credit cards.   This is not sufficient to rebut the State's prima facie case regarding the victim's losses.  As the court explained, "It would be different if [Defendant] would have said through sworn testimony that I remember taking this amount, this amount and this amount, and this is how much I had at the end of the day regardless of how I used those funds, and it's different from what Mr. [Cheng] is claiming...  [But Defendant]'s not able to do that because she just simply didn't track how much money was taken."  We agree that the Defendant failed to meet her burden below.

Based on the foregoing, we conclude that substantial evidence supports the trial court's restitution order.  We therefore affirm.

6

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        KITCHING, J.

I concur:



        EDMON, P. J.



        ALDRICH, J.

7