Filed 7/29/16  P. v. Pennington CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AUSTIN PENNINGTON,<br><br>    Defendant and Appellant. | D069674<br><br><br>(Super. Ct. No. SCD242900) |

APPEAL from an order of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Following this court's July 31, 2015 unpublished opinion reversing a restitution award of about $1.4 million and remanding for rehearing on the amount of restitution (*People v. Pennington* (July 31, 2015, D065694) [nonpub. opn.]), the trial court, after

hearing argument from the prosecution and the defense, assigned 65 percent responsibility for the injury accident to defendant Austin Pennington and 35 percent responsibility to the hit and run victim, bicyclist Andreas Heyde. Affirmed.

OVERVIEW

A. *Events Leading Up to, and Including, this Court's July 31, 2015 Opinion*

On Friday, June 29, 2012 about 11:34 p.m., defendant struck bicyclist Andreas Heyde while driving on Nimitz Boulevard in San Diego. Heyde was severely injured in the collision, suffering an open head injury, facial fractures, and a fractured tibia and fibula.

"Prior to the collision, Pennington, Heyde, and another motorist, Christopher Burchfield, were all traveling northbound on Nimitz Boulevard. In that area, Nimitz Boulevard is a straight roadway with two northbound lanes and a bicycle lane. The number 1 lane was approximately 11 feet wide, the number 2 lane was approximately 13 feet wide, and the bicycle lane was approximately 6 feet wide.

"Burchfield moved from the number 2 lane, which was closest to the bicycle lane, to the number 1 lane because he observed Pennington's vehicle following too closely from behind. Burchfield was driving approximately 40 miles per hour and Pennington was driving approximately 45 miles per hour, which was the speed limit. Just before the collision, Burchfield saw a blinking red light in the bicycle lane. He then heard a 'crunch, like plastic exploding everywhere.' Burchfield never saw Pennington apply the brakes, slow down, or swerve before the collision.

2

"Pennington and Burchfield both stopped at the scene of the accident. Pennington called 911 and reported that a bicycle was hit by a car. Pennington provided his first name [only], phone number and location of the accident. Pennington did not identify himself as the driver of the vehicle involved in the accident.

"While Pennington called 911, Burchfield attended to Heyde, who was unconscious and lying on the side of the road quite a distance from the bicycle. By the time Burchfield turned around to get Pennington's license plate number, Pennington was gone. Pennington had not provided his name or contact information to Burchfield.

"Approximately three minutes after his initial 911 call, Pennington called 911 again. During this second call, Pennington said he had driven away from the accident scene. Again, Pennington did not identify himself as the driver of the vehicle involved in the collision. Instead, he stated he 'saw a biker get hit' by a dark blue or dark green car. He also said he only saw the back of the vehicle.

"San Diego traffic investigator, Henry Castro, responded to the scene of the accident. Burchfield told Officer Castro that Pennington was the person who hit Heyde and who had called 911. Officer Castro called the number the accident reporter had left with 911 and stated he knew Pennington hit the bicyclist and requested that he come back to the scene." (*People v. Pennington*, *supra*, D065694 [at pp. 2-4].)

As it turns out, defendant did not return. Instead, the record shows at 2:00 p.m. the next day, San Diego police received a call from defendant's attorney, Domenic Lombardo. Attorney Lombardo, who also represented defendant at the most recent restitution hearing, told police he had advised defendant "not to speak with police."

3

Lombardo gave police the location of defendant's car, which was impounded and which showed front-end damage consistent with a collision. Burchfield subsequently identified defendant in a photographic lineup as the driver who struck and seriously injured Heyde.

In any event, "[b]ased on marks on the road, Officer Castro determined that the point of impact was in the number 2 lane, 17 inches over from the left edge of the bicycle lane. Thus, Heyde was riding his bicycle outside of the bicycle lane. Officer Castro stated there was shrubbery along the curb line of the bicycle lane, but no overgrowth, debris, potholes or other obstacles that impeded the bike path.

"Pennington was charged with leaving the scene of an injury accident in which he was involved without providing his identifying information (hit and run) with an allegation that he personally inflicted great bodily injury on Heyde. Pennington pleaded guilty to the hit and run. His guilty plea included waivers pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 and *Blakely v. Washington* (2004) 542 U.S. 296, allowing the court to consider the entire factual background of the case, including unfiled charges or allegations in ordering restitution and the existence of any aggravating facts." (*People v. Pennington*, *supra*, D065694 [at pp. 4-5].)

Defendant was sentenced to three years' probation. After a hearing on victim restitution pursuant to Penal Code section 1202.4, subdivision (f), the trial court determined defendant was 100 percent at fault for the accident and ordered him to pay $1,398,422.32 in victim restitution.

This court in its previous opinion addressed, among others, the issue of assignment of fault: "[T]he court heard evidence regarding the accident. Officer Castro testified that

4

Heyde caused the accident by improperly riding outside of the bicycle lane and in the roadway. [¶] Heyde's coworkers testified that Heyde regularly commuted to and from work on his bicycle. They described him as a safe rider. To their knowledge, Heyde's bicycle had a rear light that was visible from a quarter mile away.

"The prosecution's accident reconstruction expert, Ernest Phillips, testified that based on the damage to the bicycle and Pennington's vehicle, Heyde had not suddenly swerved into the traffic lane because Pennington did not hit the bicycle at an angle. Phillips also stated that the flashing red light on the back of Heyde's bicycle would have been apparent to any reasonably attentive driver from 600 feet or 10 seconds of approaching the bicycle. Given the width of the roadway, Pennington's vehicle had enough space to move to the left to avoid the collision and should have given Heyde wider berth.

"Phillips opined that Pennington's unsafe speed and inattention caused the accident because Pennington ran into a bicyclist that had reflectors to the rear and a flashing red strobe. According to Phillips, Pennington could have avoided the accident if he had been more attentive and driving at a safer speed. When asked if Heyde had any responsibility for the collision, Phillips stated, 'It would depend on why he was out of the bike lane.' Phillips stated it would have been helpful to have a photograph of the area from Heyde's direction of travel because it might have explained why Heyde was outside of the bicycle lane. The photographs that Phillips had seen did not necessarily depict the conditions on the date and time of the incident. Instead, Officer Castro's testimony was the only evidence of the conditions at that time.

5

"Despite Burchfield's testimony that he saw the flashing red light on Heyde's bicycle just before the collision, Phillips testified that Burchfield's recollection does not mean that was the first time he actually saw the flashing red light. Phillips stated that a motorist sees many things that he does not process as being important, such as a flashing red strobe light at night with 600 feet of visibility, so the driver does not store the information in his [or her] memory. Rather, a driver filters out information until it becomes important. Accordingly, Burchfield 'filtered out' seeing the flashing red light until the collision happened.

"Thomas Greenstone, the District Attorney's investigator, agreed with Phillips that Pennington caused the collision due to Pennington's violation of the basic speed law. Greenstone based his opinion on facts that Heyde's bicycle had reflectors, Heyde was wearing reflective clothing, a witness saw the flashing red light on Heyde's bicycle, and Pennington ran Heyde over. Greenstone did not believe Heyde riding outside the bicycle lane was a primary factor in the collision. Like Phillips, Greenstone did not believe Heyde suddenly swerved into the traffic lane. Instead, Heyde was in the number 2 lane long enough to be riding with the flow of traffic. Greenstone concluded that Pennington should have seen Heyde because Burchfield saw him.

"At the conclusion of the comparative fault hearing, the trial court determined Pennington was 'the sole cause of the collision' because he 'was not exercising reasonable care when driving.' The court further concluded that Heyde was operating his bicycle in a lawful fashion and '[t]here [was] no evidence that he was not traveling in the bicycle lane other than at the actual point where this collision occurred.' The court relied on

6

photographs of the scene showing overgrowth and debris in the bicycle lane and evidence that Heyde was wearing reflective pants and had a red light on his bicycle that was visible from one quarter to one mile away. The court found that although Heyde was riding 17 inches into Pennington's traffic lane, there was plenty of room for Pennington to drive defensively and give Heyde enough space. Further, the court stated that while it was possible that Heyde darted out into the lane of traffic, there was no evidence to indicate he did so. Accordingly, the court ordered Pennington to pay restitution in the amount of $1,398,422.32. [¶] . . . [¶]

"Pennington . . . argues the trial court's decision assigning 100 percent fault for the accident to him was not supported by substantial evidence because the trial court relied on speculative testimony and improper evidence. We agree. [¶] . . . [¶]

"Here, it was undisputed that the accident occurred while Heyde was riding outside of the bicycle lane and 17 inches into the number 2 lane of traffic. On roadways where there is an established bicycle lane, bicyclists must ride in that lane except when passing another bicycle if passing cannot be done safely within the lane, when preparing to turn left, when reasonably necessary to avoid debris or other hazards, or when approaching a place where a right turn is authorized. (Veh. Code, § 21208, subd. (a).) Even when leaving the bicycle lane is authorized, a bicyclist shall not do so until the movement can be done with reasonable safety and then only after giving an appropriate hand signal if a vehicle may be affected by the bicycle's movement. (*Id.* at subd. (b).) Heyde's reason for riding outside the bicycle lane was unknown. Regardless, the trial court determined that Pennington was the sole cause of the accident because Heyde's

7

bicycle was visible to a reasonably attentive driver and there was no evidence that Heyde darted out into traffic.

"The trial court based its decision in part on expert testimony that was speculative and unsupported.  'An expert's opinion . . . "may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact.  [Citation.]  Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.  [Citations.]" '  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123.)

"Phillips, the prosecution's accident reconstruction expert, testified that the flashing red light on Heyde's bicycle was visible from 600 feet or 10 seconds away.  This testimony was inconsistent with Burchfield's testimony that he saw the blinking red light only 'right before [Heyde] got hit, so maybe two car lengths.'  Phillips explained Burchfield's testimony by stating Burchfield must have 'filter[ed] out' seeing the red light because the information was unimportant until the time of the collision.  Based on the record before us, Phillips did not have any experience with cognitive psychology or in the area of how people process and store information in their memories.  Rather, Phillips's education and experience was in the fields of criminal justice, manufacturing engineering and accident reconstruction.  'A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.'  (Evid. Code, § 720.)  Phillips did not have

8

the requisite experience to form an admissible opinion that Burchfield's memory of seeing the red light was faulty. Accordingly, Phillips's opinion in that regard was conjecture and mere speculation.

"The trial court also relied on photographs of the location of the accident that showed overgrowth and debris in the bicycle lane to explain why Heyde may have been riding in the traffic lane. However, as Phillips conceded, the photographs of the accident scene did not necessarily depict the conditions on the date and time of the incident. Rather, Officer Castro's testimony was the only evidence of the conditions at that time. Officer Castro testified that there was shrubbery along the curb line of the bicycle lane, but no overgrowth, debris, potholes or other obstacles that impeded the bike path. Thus, Officer Castro testified that the cause of the accident was Heyde's act of improperly riding outside of the bicycle lane and in the roadway. Other than Officer Castro's testimony, there was no competent evidence of the condition of the bicycle lane at the time of the accident. Accordingly, the trial court's conclusion that there was overgrowth and debris in the bicycle lane at the time of the accident was not supported by the evidence.

"As we stated, it was undisputed that Heyde was riding in the number 2 traffic lane when the accident occurred. Phillips outlined three scenarios as to why Heyde may have been outside the bicycle lane. Specifically, Heyde may have been preparing to turn left, avoiding a hazard, or simply riding for a significant period outside the lane. In regard to turning left, Greenstone testified that there was a raised concrete center median in the area of the collision and no left turns were permitted at the approaching

9

intersection. As for avoiding a hazard, Officer Castro stated there were no obstacles impeding a bicyclist's travel in the bicycle lane. The only remaining scenario was that Heyde was riding in the number 2 traffic lane for a significant period of time. Although pursuant to Vehicle Code section 21208, subdivision (a), Heyde should have been riding in the bicycle lane except under specific circumstances not shown here, the trial court nevertheless concluded that Heyde did not share any fault for the accident.

"Based on the record before us, we conclude the evidence was insufficient to support the trial court's conclusion that Pennington was 100 percent at fault for the accident as this conclusion ignored competent evidence and instead favored unsupported evidence. Moreover, the trial court improperly ignored evidence regarding Heyde's role in the accident. Accordingly, we remand to the trial court to determine restitution in light of the views expressed herein." (*People v. Pennington*, *supra*, D065694 [at pp. 14-18].)

B. *Remand and Current Appeal*

On remand, defendant filed a seven-page brief arguing the prosecution failed to meet its burden of proof to show defendant was the proximate cause of the accident. Defendant argued the evidence instead showed the accident was the result of an "unavoidable collision" and a "sudden emergency" when Heyde allegedly unexpectedly swerved into the traffic lane moments before he was struck by defendant's car.

The record shows the court at the beginning of the Penal Code section 1202.4 restitution rehearing noted that it had read and considered defendant's seven-page brief and this court's 2015 opinion and that it also had presided over the previous restitution hearing when evidence had been taken.

10

The People argued the trial court was not required to assign comparative fault and therefore, should once again find defendant 100 percent responsible, relying on *People v. Carbajal* (1995) 10 Cal.4th 1114. The People further argued that, excluding both Phillips's opinion regarding Burchfield's "faulty memory" and the unsupported conclusion that there was debris in the bike lane which caused Heyde to ride 17 inches into the traffic lane, the remaining evidence nonetheless showed that Heyde's bicycle had a blinking red light on the back of his bicycle that was seen by motorist Burchfield just before the accident; that the physical evidence strongly suggested Heyde did not "dart out at the very last moment," but rather his bicycle was facing "straight ahead" and "parallel with the lane," when he was struck; that if defendant had been reasonably attentive, he would have seen Heyde regardless of whether the bicyclist was riding 17 inches outside the bicycle lane; that defendant thus would have had ample space to move into the next lane and/or also could have applied his brakes to slow down, but did not; that defendant was not exercising reasonable care when driving, as Burchfield moved to the next lane because defendant was following too closely from behind; and that defendant "could have avoided that collision, if he were driving pursuant to the basic speed law and paying attention."

Defendant argued that he could not be held 100 percent responsible for the accident because this court already had determined the evidence did not support that finding. Defendant also argued the evidence showed the accident was unavoidable,

11

including that: motorist Burchfield's car (allegedly)[1] limited defendant's view of the bicyclist "in the moments just prior to the collision"; Burchfield, who (allegedly) had an even better view of the bicyclist than defendant, did not become aware of the flashing light on the back of the bicycle "until just before the collision"; and regardless of whether Heyde swerved out of the bicycle lane at the last second or was riding straight "along that lane," defendant (allegedly) had about a "one[-]second opportunity" to see the bicyclist and initiate "the driver sequence to avoid" him.

The record shows the court next summarized in substantial detail both the evidence and this court's earlier opinion. The court noted as follows the difficulty it was facing regarding the assignment of fault issue that is the subject of the instant appeal:

"Counsel has made a comment about what opportunity did Mr. Pennington have to observe what happened, avoid the collision, if you will, observe the light on the back of the bicycle. *The problem with that is that we don't know.* We don't have a story from Mr. [Heyde] because of the injuries he sustained.[2] We don't have a story from Mr. Pennington because Mr. Pennington . . . fled the scene and he didn't give a statement as to what happened. [¶] And even if you read the transcript of the hearing where Officer Castro testified, Officer Castro's involvement was to assign a primary fault. That's what police do. They don't investigate, they report. They make reports. And Officer Castro

_____

1    We say "allegedly" because defendant left the scene and never gave a statement or testified regarding the accident, including about the events leading up to it.

2    In fact, at one point during the argument, defense counsel noted Heyde then remained in a coma as a result of the accident.

12

[al]luded to the fact that he would have liked to have known preparing his report what Mr. Pennington had to say, but he was deprived of that. He didn't have that available." (Italics added.)

The record shows the court next stated it was not going to rely on any of Phillips's testimony in analyzing the assignment of fault issue, as a result of this court's prior opinion. It noted that Greenstone opined defendant caused the collision as a result of defendant's violation of the "basic speed law," as set forth in Vehicle Code section 22350.[3] It further noted Greenstone based his opinion "on facts that [Heyde]'s bicycle had reflectors, [Heyde] was wearing reflective clothing, a witness saw the flashing red light on [Heyde]'s bicycle, and he opined that [defendant] ran [Heyde] over." Greenstone also "did not believe [Heyde] riding outside the bicycle lane was [the] primary factor in the collision. Greenstone did not believe [Heyde] suddenly swerved into . . . traffic[.] Instead, [Heyde] was in the No. 2 lane long enough to be riding with the flow of traffic. Greenstone concluded that [defendant] should have seen [Heyde] because Burchfield saw him."

The court noted that, in apportioning fault under the circumstances of this case, there was "no magic formula," but that it was "bound by [the] direct evidence that was presented at the hearing and circumstantial evidence and logical inferences from circumstantial evidence." The court further noted that after disregarding Phillips's

_____

3    Vehicle Code section 22350 provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

testimony, it was still left with "direct evidence. That's the evidence from Mr. Burchfield who was a witness. And we have Officer Castro's testimony. Again, a report was made. Not an investigation, just a report. And I have the circumstantial evidence as to the point of impact and where the bicycle was and the light on the back of the bicycle and the testimony that the light was working and it was flashing. Mr. [Heyde] was in reflective clothing because of his work at the airport. We have the location of the bicycle where it was found. We have the damage to the bicycle. And that's what I have."

After "weighing and balancing all of the factors on both sides of the equation," the court found defendant 65 percent responsible and Heyde 35 percent for the accident. The court on remand thus modified the restitution order to show defendant owed $908,974.49, or 65 percent of $1,398,422.32.

Defendant timely appealed from the order. Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), appointed counsel filed a brief on behalf of defendant setting forth the facts of the case and requesting we review the entire record. In addition, pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel has identified the following issue that "might arguably support the appeal" (*id*. at p. 744): whether the court abused its discretion and thus erred in assigning defendant 65 percent comparative fault for the collision with Heyde.

On our own motion, we gave defendant 30 days to file a supplemental brief on his own behalf. Defendant did not respond.

DISCUSSION

The *Anders* issue raised by appointed counsel requires us to examine whether the court abused its discretion when it found the evidence supported assigning defendant 65 percent responsibility for the collision with Heyde.

According to most courts, " ' "[t]he standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" [Citation.]' [Citation.] 'In reviewing the sufficiency of the evidence, the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment [or order] may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 686-687 (*Prosser*).)

"Except as provided in subdivisions (q) and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other

15

showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (Pen. Code, § 1202.4, subd. (f).)

Here, we conclude the court properly exercised its broad discretion in finding defendant 65 percent responsible for the collision with Heyde. Indeed, the record shows, and defendant does not argue otherwise, that Heyde regularly commuted on a bicycle from El Cajon to his work at the airport; that Heyde was a safe rider; that Heyde's bicycle had a red light on the back that was flashing when he was struck by defendant about 11:30 p.m. on a Friday night; that Heyde also was wearing reflective clothing when he was struck; that just before the collision, Burchfield saw a "blinking red light in the bicycle lane"; that also just before the collision, Burchfield moved from the No. 2 lane, which was closest to the bicycle lane, to the No. 1 lane because defendant's vehicle was following too closely from behind; that Greenstone opined defendant caused the collision because defendant violated the basic speed law set forth in Vehicle Code section 22350; that Greenstone further opined the fact Castro determined Heyde was riding his bicycle 17 inches outside the bicycle lane—"based on marks on the road"—was not a primary factor in causing the collision because defendant had sufficient space to avoid the collision in the first instance if he had been paying attention; that evidence suggested Heyde did not suddenly swerve in front of defendant's vehicle just before the collision, but rather was riding his bicycle straight ahead; that defendant made no attempts to brake or avoid Heyde before the collision; and that defendant fled the scene after *briefly* stopping and waited until the following afternoon to turn himself in. (See *People v.*

16

*Bonilla* (2007) 41 Cal.4th 313, 328 [noting a " 'flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting his [or her] movement was motivated by a consciousness of guilt" ' "].)

Based on such evidence and the inferences drawn from it, we conclude there is a "factual and rational basis for the amount of restitution ordered by the trial court" in this case. (See *Prosser*, *supra*, 157 Cal.App.4th at p. 686.)

## DISPOSITION

The order modifying the victim restitution awarded pursuant to Penal Code section 1202.4 is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

PRAGER, J.[*]

---

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.