Filed 4/29/26  P. v. Giametta-Reitkopp CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPHINE MARGARET GIAMETTA-REITKOPP et al.,<br><br>    Defendants and Appellants. | G065105<br><br>(Super. Ct. No. 20CF1399)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Huy T. Nguyen, Judge. Affirmed.

Brown & Stedman and Edwin B. Brown for Defendants and Appellants.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Daniel Rogers, Alana C. Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants Josephine Margaret Giametta-Reitkopp and Edward Barry Reitkopp pled guilty to animal abuse after 150 Shih Tzu dogs were found on their property in various stages of neglect and mistreatment.[1] As part of their sentence, defendants were ordered to pay restitution as a condition of their probation. Following an evidentiary hearing, the court awarded restitution in the amount of $300,369.15 to Orange County Animal Care (OCAC). Defendants appeal the amount of the restitution award only, contending the trial court improperly ordered restitution without proof of OCAC's actual costs of impoundment and the other amounts awarded were not supported by admissible evidence.[2] We reject defendants' contentions, find no abuse of discretion by the trial court, and affirm.

PROCEDURAL BACKGROUND

On May 27, 2020, defendants were charged with one felony count of animal abuse (Pen. Code, § 597, subd. (b); count 1)[3] and one misdemeanor count of keeping an animal without proper care (§ 597.1, subd. (a)(1); count 2). On January 19, 2024, defendants pled guilty to both counts. As part of their plea agreement, defendants admitted as follows: "[O]n May 30, 2019, having the charge and custody of dogs, I did unlawfully subject the animal to needless suffering by failing to provide the animal with proper shelter, and as an owner of an animal, I did permit the animal to be in a building without proper care and attention." Defendants agreed to pay restitution on counts 1

---

[1] One of the 150 dogs recovered from defendants' premises was found deceased.

[2] Defendants are not contesting a fine in the amount of $4,620, which was included as part of the restitution award.

[3] All further statutory references are to the Penal Code.

2

and 2 in an amount to be determined pursuant to a *Harvey* waiver.[4]
Defendants were placed on two years of formal probation subject to terms
and conditions and were ordered to serve 90 days in jail, which was stayed.
The conditions of probation included the payment of restitution in the
amount directed by the probation department, 200 hours of community
service, and 10 counseling sessions regarding pet animal care.[5]

On December 16, 2024, following an evidentiary hearing on the
amount of restitution, the trial court ordered defendants to pay $300,369.15
to OCAC.

Defendants timely appealed the restitution order.

## DISCUSSION

## I.

### LAW REGARDING RESTITUTION IN ANIMAL ABUSE CASES

Restitution in animal cruelty cases is statutorily authorized.
Pursuant to section 597, subdivision (g)(1), "A person convicted of a violation
of [section 597] by causing or permitting an act of cruelty . . . shall be liable to
the impounding officer for all costs of impoundment from the time of seizure
to the time of proper disposition." In addition to these costs of impoundment,
restitution includes "costs incurred in the housing, care, feeding, and
treatment of the seized or impounded animals." (§ 597.1, subd. (l)(1).)

---

[4] See *People v. Harvey* (1979) 25 Cal.3d 754. "'A defendant who
signs the typical waiver form agrees to allow the sentencing judge to consider
his entire criminal history, including any unfiled or dismissed charges.'"
(*People v. Snow* (2012) 205 Cal.App.4th 932, 937.)

[5] Upon completion of the terms of probation, defendants' jail
sentence will be stayed permanently and count 1 will be reduced from a
felony to a misdemeanor.

3

Restitution payments are "in addition to any other fine or sentence ordered by the court." (*Ibid.*)

Here, defendants were ordered to pay restitution as a condition of their probation. "Restitution has long been considered a valid condition of probation." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; see § 1203.1, subd. (a)(3) [In granting probation, "[t]he court shall provide for restitution in proper cases"].) "'A trial court's power to order restitution in probation cases is . . . broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence.'" (*People v. Koontzy* (2024) 102 Cal.App.5th 268, 277.)

A defendant subject to a restitution order has no additional due process rights than a defendant would have at a sentencing hearing. The trial court, for instance, may consider hearsay statements in a report that is inherently reliable, such as one prepared by a government employee in furtherance of his or her official duties. (See *People v. Cain* (2000) 82 Cal.App.4th 81, 87.) Unless "the hearing procedures are fundamentally unfair," a defendant's due process rights are not violated. (*Ibid.*) The "[r]eliability of the information considered by the court is the key issue in determining fundamental fairness." (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754–755.)

"The standard of proof at a restitution hearing is preponderance of the evidence." (*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115.) A victim's statement of economic loss is prima facie evidence of the loss, and the defendant bears the burden to disprove the prima facie loss claimed by the victim. (*Ibid.*) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts

4

to the defendant to disprove the amount of losses claimed by the victim."
(*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)

## II.

### STANDARD OF REVIEW

"On appeal, we presume that a judgment or order of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'"" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) We review a restitution order for abuse of discretion, and abuse of discretion occurs if the court's decision is arbitrary or capricious, or if there is no factual and rational basis for the amount ordered. (*People v. Tafoya* (2025) 109 Cal.App.5th 868, 905.) "We do not reweigh the evidence or make credibility decisions; we only 'determine whether there is sufficient evidence to support the inferences made by the trial court.'" (*Ibid.*) "[T]he scope of a trial court's discretion is broader when restitution is imposed as a condition of probation." (*People v. Giordano, supra,* 42 Cal.4th at pp. 653, 663, fn. 7.)

## III.

### ANALYSIS

Defendants make several arguments on appeal. First, they contend the restitution amount awarded by the court resulted in a windfall to OCAC, rather than compensating it for the actual impound costs it incurred. Specifically, defendants challenge OCAC's use of a pre-set fee schedule adopted by the County and City of Orange in determining costs of impoundment, rather than producing actual evidence of its out-of-pocket costs for boarding and caring for all 149 dogs. Defendants also contend OCAC failed to provide sufficient documentation to support its requests for certain

medical treatment, including blood draw tests, X-rays, medicine, and supplies.

We find no merit in defendants' contentions. The trial court had broad authority to select an appropriate amount of restitution as a condition of probation, there was a factual and rational basis for the amount awarded, and defendants had a full and fair opportunity to contest the amount of restitution and failed to do so.

In support of the request for restitution, the People submitted a detailed report from Jennifer Hawkins, a contract veterinarian with OCAC, regarding the condition and treatment of the dogs seized from defendants' home on May 30, 2019.[6] The People also submitted a detailed spreadsheet to the trial court entitled "OC Animal Care Receipt," which summarized the care provided to each animal by OCAC and the costs of that care, which totaled $300,369.15. The document itemizes in detail the charges for flea treatment, antibiotics and other medications, bathing and grooming, blood draws, impounding, and boarding.[7] The People also submitted city and county fee schedules outlining the costs for OCAC's services. The probation

---

[6] Hawkins became involved in the case when the dogs were first rescued from defendants' property and thereafter oversaw their care and treatment.

[7] Defendants have calculated the breakdown of fees from the spreadsheet provided by OCAC to include (1) $216,956 for boarding fees, (2) $20,500 for impound fees, (3) $6,940 for grooming fees, (4) $3,840 for bathing fees, (5) $17,303 for blood draw tests, (6) $677 for X-rays, (7) $3,240 for veterinarian services, (8) $26,293.15 for medicine and supplies, and (9) $4,620 for the return to owner fine that is not contested by defendants. Respondent does not dispute the accuracy of this breakdown.

6

department reviewed the claim by OCAC, determined it was valid, and recommended restitution be set in that amount.

It would be an understatement to say the dogs had been living in horrific conditions and were in bad shape when they were discovered. The dog found to be deceased had been dead for at least two to three weeks and was in a state of severe decomposition. The floors of the premises were covered in urine and feces, and the premises had a high concentration of ammonia, a byproduct of animal waste, which serves as an irritant to the eyes, nose and throat and poses a serious health risk to animals and humans. The dogs were suffering from profound flea infestations, including chronic blood loss, life threatening anemia, overgrown toenails, untreated fractures, dry eye, severely matted fur, feces-soaked fur, skin infections, congenital birth defects caused by inbreeding, poor body weight arising from malnourishment, dehydration, lack of regular access to food and water, lack of access to exercise and absence of veterinary care.

Hawkins personally performed physical examinations on every one of the dogs. In her own words, "[t]he dogs were covered in urine and feces waste and were pungent with strong ammonia and waste odors. Feces caked mats hung from the sides of dogs like curtains of entwined fecal balls." According to Hawkins, the first night they were impounded, it took all night for 23 staff members and volunteers to triage and provide immediate care to 143 dogs, including collecting blood samples, and bathing and grooming. There were 15 dogs who demonstrated signs of lameness or cardiopulmonary disease, organ disease or congenital abnormalities, and required X-rays.

In total, the dogs spent between one and 62 days each in the care of OCAC before disposition through adoption, fostering, transfer, or placement with a rescue organization or shelter.

7

Defendants opposed the request for restitution. They provided information from websites regarding how much food a dog requires and a handwritten calculation prepared by defendant Edward Reitkopp regarding the total cost of feeding 150 dogs, which he concluded was $750. Defendants also submitted articles and a report containing complaints about OCAC relating to other animals that were not involved in this case, a partial list of fees and charges for impounding animals from another city in California and a document showing "[a]verage dog boarding rates" from another website.

We have reviewed the record, including the evidence submitted by both parties, and conclude substantial evidence exists supporting the trial court's finding by a preponderance of the evidence of the restitution award. We find no abuse of discretion by the trial court in awarding the full amount of the People's request. We further conclude that defendants failed, in response to the People's evidence, to meet their burden of demonstrating the amount of the loss claimed by OCAC was other than what it claimed. None of the documents submitted by defendants either refute the evidence introduced by the People about the actual care and treatment of the dogs rescued from defendants' home or establish the fee schedules submitted by the People exceed the reasonable costs of the services provided.

We find no merit in defendants' contention that the evidence was insufficient to support the restitution request and resulting award. The report from Hawkins regarding the dogs' conditions and the treatment they required, along with the itemized charges, constitute sufficiently reliable evidence on which the trial court could rely to award restitution. As explained in *People v. Prosser* (2009) 157 Cal.App.4th 682, 690, "'[n]o abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil

8

action. [Citation.] In determining the amount of restitution, all that is required is that the trial court "use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious." [Citations.] The order must be affirmed if there is a factual and rational basis for the amount.'" In *People v. Prosser*, the court held that a theft victim's opinion of the value of property they lost constituted substantial evidence of value, "even though it was unsupported by receipts . . . ." (*Id.* at p. 685.) Indeed, ""'[d]ue process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . [. S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source . . . whence it comes."'"" (*Id.* at p. 692; see *People v. Anderson* (2025) 110 Cal.App.5th 1256, 1261 [prosecution met its burden of establishing a prima facie case by presenting a detailed chart documenting the loss amounts along with supporting testimony, and burden then shifted to defendant to prove claimed amounts were excessive].)

Defendants also argue it was improper for the trial court to consider the reasonableness of the total request by OCAC by comparing the costs to what another appellate court found to be reasonable in *People v. Brunette* (2011) 194 Cal.App.4th 268.[8] The *Brunette* court affirmed a $127,000 restitution order for the care and treatment of 51 seized dogs. Here, the trial court stated, "[w]e have 149 dogs, roughly three times the amount, roughly three times the cost." We need not address whether, standing alone, it would have been proper for the trial court to determine the restitution

---

[8] The trial court also cited *Brunette* for its holding that restitution should not be offset by adoption fees, a conclusion with which we agree. (*Brunette, supra*, 194 Cal.App.4th at pp. 285–286.)

award based on its reasonableness compared to restitution awarded in another case because, here, the trial court also relied on actual evidence in the record in this case to support the award of restitution.

DISPOSITION

The postjudgment order is affirmed.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.